UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:04CV76 RWS |
| | ) | |
| 8,800 POUNDS OF POWDERED EGG WHITE, more or less, | ) ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| CREATIVE COMPOUNDS, LLC, | ) | |
| | ) | |
| Movant. | ) | |

## MEMORANDUM AND ORDER

Claimant Creative Compounds, LLC, imported 8,800 pounds of powered egg white product from Peru in violation of federal law. Plaintiff United States of America seeks a judgment for the seizure and condemnation of the powered egg whites. Creative Compounds filed two counterclaims: one based on negligence and the other on an improper taking of property. The United States moved to dismiss Creative Compounds' claims based on sovereign immunity and lack of jurisdiction. The United States also seeks summary judgment on its seizure and condemnation claim. Because the United States has sovereign immunity and because Creative Compounds' claims are barred by the Federal Tort Claims Act I will grant the motion to dismiss. I will also grant the United States' motion for summary judgment because there are no material facts in dispute and judgment is appropriate as a matter of law.

*Legal Standard*

The United States has moved to dismiss Creative Compounds' counterclaims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and seeks summary judgment under Fed. R. Civ. P. 56.

When ruling upon a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court must

accept as true all factual allegations in the complaint and view them in the light most favorable to the nonmovant. Fed. R. Civ. P. (12)(b)(6); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

Unlike state courts which often require detailed statements of fact in a petition, the federal rules require only notice pleading. Federal Rule of Civil Procedure 8(a) requires that a complaint include a short and plain statement of the claim showing that the pleader is entitled to relief. Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Erickson, 127 S. Ct. at 2200. However, '[e]ven the liberal standards of notice pleading require some factual allegations that state a cause of action and put a party on notice of the claim against it." Mattes v. ABC Plastics, Inc., 323 F.3d 695, 699 (8th Cir. 2003). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Romine v. Acxiom Corp., 296 F.3d 701, 711 (8th Cir. 2002).

When ruling upon a motion to dismiss under Fed. R. Civ. P. 12(b)(1), a district court is free to review matters outside of the complaint such as affidavits and documents. Osborn v. United States, 918 F.2d 724, 729-31 (8th Cir. 1990). Unlike a decision based on a Rule 12(b)(6) motion, a court's review of information outside of a complaint does not convert a Rule 12(b)(1) motion into a Rule 56 motion for summary judgment. Id. A Rule 12(b)(1) motion is distinct in that, unlike a Rule 12(b)(6) motion, when a factual challenge to jurisdiction is made by a movant there is no presumptive truthfulness attached to a plaintiff's allegations in the complaint. Id. at 730 (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977)).

In considering whether to grant summary judgment, a district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ...." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence,

viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Background*

Creative Compounds is in the business of providing raw ingredients for manufacturers and end users of nutritional products. In 2003, Creative Compounds' president Gary Haynes, sought to purchase "egg protein" (powdered egg whites) for a client. It was the first time Creative Compounds dealt with procuring this product. Because the prices in the United States for the product were rising, Haynes identified a less expensive egg protein product from a supplier in Peru.

Haynes and another employee of Creative Compounds contacted the United States Department of Agriculture (USDA) to determine what was needed to import the product from Peru. They were directed to a website by an unidentified USDA employee and told to download and complete a permit application with the Animal and Plant Health Inspection Service (APHIS),

of the USDA. APHIS has the authority to regulate the importation of animal products which can introduce foreign animal diseases to the United States regardless of the final intended use of the products. Under 9 C.F.R. § 94.6(c)(4), eggs may be imported if they have been processed in a manner that will prevent the introduction of Exotic Newcastle disease. The eggs must be accompanied by a permit obtained from APHIS prior to their importation.

On July 31, 2003, Haynes, on behalf of Creative Compounds, applied for a permit from APHIS to import egg white powder (albumin) to be used for human consumption from Peru to the United States. On August 6, 2003, Creative Compounds received an acknowledgment of a receipt of its permit application from APHIS which stated that payment does not guarantee permit approval.

In his deposition testimony, Haynes stated that after he filed the application for a permit he spoke with a Dr. Robinson from APHIS to answer a question about the required time and temperature of pasteurization of the egg whites. Haynes testified that he asked if there were any other requirements besides the permit that Creative Compounds needed to fulfill to import the egg product. Haynes testified that Robinson told him that "there was nothing else other than to wait for the permit to be issued." (Haynes depo. p. 41)

On September 8, 2003, *before* the permit was issued, Creative Compounds received an invoice from the manufacturer in Peru for the purchase of 8,800 pounds of powdered egg whites. Creative Compounds asserts that on September 11, 2003, it received an email from some unspecified department of the USDA stating that the "permit had been drafted."[1] (Claimant's Resp. Br., Statement of Facts, p. 3)

On September 30, 2003, the 8,800 pounds of powdered egg whites was received at port in

---

[1] This document has not been placed in the record and Creative Compounds has not identified what division of USDA sent the notice. It presumably was sent by APHIS.

New York City, New York. The product was transported under bond on October 13, 2003 to Chicago, Illinois to clear customs.

The permit to import the product was not issued by APHIS until October 15, 2003. The permit, numbered C-4798, was e-mailed to Creative Compounds on October 16, 2003.

The permit listed two requirements. First, the permit stated that the egg shipment had to be accompanied by an original certificate endorsed by a veterinarian of the agency responsible for animal health of the government of Peru certifying that the product had been pasturized at a specified time and temperature.

Second, the permit stated that the importer was responsible for obtaining any required authorization from the Food and Safety Inspection Service (FSIS), a department of the USDA, and that FSIS had specific public health requirements concerning egg products apart from the USDA's animal health requirements regulated by APHIS. The permit states "Importer to contact" and then provides the telephone number for FSIS .

Haynes testified in his deposition that he did not read the permit when it was e-mailed to Creative Compounds, he simply printed it, signed it, and forwarded it to his import broker to get the egg whites released from customs in Chicago. (Haynes depo. p. 49)

As a result, Creative Compounds failed to comply with either of the requirements. The shipment was not accompanied by an original endorsed certificate required by the permit and Haynes did not contact FSIS to obtain that department's authorization.

Had Haynes contacted FSIS as required by the permit, he would have learned that the Egg Product Inspection Act (EPIA), 21 U.S.C. § 1046(a)(2) bans the importation of egg products capable of use as human food unless the eggs were processed under certain standards. He also would have learned that the importation of eggs capable for use as human consumption from Peru

is banned under 9 C.F.R. § 590.910 because Peru's egg inspection system does not meet the criteria of the EPIA. The FSIS is delegated with the authority by the Secretary of Agriculture to enforce the statutory provisions of the EPIA.

Even though Haynes did not comply with the permit's requirements he submitted the permit and shipping paperwork through his import broker to the customs officials in Chicago. The broker apparently did not contact Haynes concerning the lack of a health certificate required by the permit to import the product. The egg white shipment was released by customs on October 23, 2003, and transported by Creative Compounds to its storage facility in Chaffee, Missouri.

On December 5, 2003, William Threlkeld, a program investigator with FSIS, was contacted by FSIS's Great Plains Regional Office concerning Creative Compounds' possible illegal importation of egg whites from Peru. Threlkeld went to the Chaffee warehouse and determined that the egg whites were shipped from Peru under permit C-4798 and were capable of use for human consumption. He detained the shipment under 21 U.S.C. § 1048 because it was imported into the country in violation of the EPIA. On December 11, 2003, Threlkeld interviewed Haynes and discovered that Creative Compounds had not called FISI for authorization to import the product nor did it obtain an original health certificate from the government of Peru to accompany the shipment as was required by the permit.

On December 23, 2003, FSIS released the product from FSIS detention into the custody of APHIS. On the same day, APHIS issued an Emergency Action Notification (EAN) to restrict the entry of the product into the stream of commerce under 9 C.F.R. § 94.6 and under 7 U.S.C. § 8303(a)(1) of the Animal Health Protection Act (AHPA), 7 U.S.C. § 8301 *et seq.*

In the late winter and early spring of 2004, a series of communications was made between Creative Compounds and APHIS concerning the powdered egg whites shipment. Creative

Compounds was advised that it had to submit a valid health certification from Peru by February 2, 2004 or Creative Compounds would have to voluntarily destroy the product. On January 30, 2004, Creative Compounds' legal counsel Mitchell Fuerst requested an extension of time to procure the health certificate. He stated that if the government filed a lawsuit to seize and condemn the egg whites Creative Compounds will seek the "recovery of attorneys fees and costs in a suit against the United States government for claims under the Federal Tort Claims Act...."

On February 20, 2004, Tracey Manoff of the Office of the General Counsel of the USDA, and two other USDA representatives held a teleconference with Creative Compounds' Haynes and Fuerst to discuss the required health certificate. On March 10, 2004, Manoff wrote to Fuerst stating that she had not had any contact or correspondence from him concerning the required health certificate. Manoff stated that because a health certificate was not produced the only option available was to destroy the product. Manoff requested a response by March 17, 2004, as to whether Creative Compounds was willing to destroy the product. If not Manhoff stated that she would refer the matter to the United States Department of Justice to exercise all enforcement options available including seizure, forfeiture, condemnation, and destruction of the product.

On March 15, 2004, Fuerst sent a reply letter to Manoff stating that Creative Compounds was unable to obtain a contemporaneous health certificate as required by the USDA. Fuesrt stated that Creative Compounds will not voluntarily destroy the product and he requested an export certificate to export the product back to Peru.

On March 23, 2004, Manoff replied to Fuerst's letter. Manhoff stated that, as she had advised Fuerst and Haynes in the February 20, 2004 teleconference, that Creative Compounds had impermissibly imported the product and that it could not be exported because the EPIA states : No person shall buy, sell, or transport, or offer to buy or sell, or offer or receive for transportation, in

commerce any egg products required to be inspected under this chapter unless they have been so inspected and are labeled and packaged in accordance with the requirements of section 1036 of this title." 21 U.S.C.A. § 1037(2)(b)(2). Manoff told Fuerst that once the product was imported into the United States it is deemed a domestic article and "subject to all of the provisions of the EPIA and the federal regulations promulgated pursuant to the Act. (9 C.F.R. § 590.900(b))." Manoff stated that because the powered egg whites were not an inspected product it could not be transported in intrastate or interstate commerce nor could it be exported.

On March 29, 2004, Fuerst sent a response letter to Manoff in which he stated that he disagreed with Manoff's position and that Creative Compounds will not agree to voluntarily destroy the powdered eggs whites. He requests the USDA to refer the matter to the Department of Justice for the commencement of litigation to destroy the product and stated that he would file a counterclaim under the Federal Torts Claim Act.

On June 2, 2004, the powdered egg white shipment was re-detained by FSIS. On June 15, 2004, the United States filed the present in *rem action*, under 21 U.S.C. § 1049[2], for the seizure and condemnation of the powdered egg whites product. The United States claims that the product was prohibited from entry into the United States under 21 U.S.C. § 1046 and 9 C.F.R. § 590.910. The United States also asserts that the product had not been inspected in the United States and is therefore prohibited for sale or transport in commerce under 21 U.S.C. § 1037(b)(2).

On June 16, 2004, this Court entered an order authorizing the arrest of the 8,800 pounds of powdered egg whites. The product was seized and stored by the United States Marshal on that

---

[2] 21 U.S.C. § 1049 states: "Any eggs or egg products that are or have been processed, bought, sold, possessed, used, transported, or offered or received for sale or transportation, in violation of this chapter, or in any other way are in violation of this chapter; and any restricted eggs, capable of use as human food, in the possession of any person not authorized to acquire such eggs under the regulations of the Secretary shall be liable to be proceeded against and seized and condemned, at any time, on a complaint in any United States district court ...."

date in Chaffee, Missouri, where it is presently located.

*Discussion*

The United States filed this case as an *in rem* action for the seizure and condemnation of the 8,800 pounds of powdered egg whites asserting that the product was improperly imported into the United States by claimant Creative Compounds. It is undisputed that the product was imported in to the country in violation of the EPIA, 21 U.S.C. § 1046(a)(2) and 9 C.F.R. § 590.910 because Peru's egg inspection system does not meet the criteria of the EPIA. I find that because the product was imported it became a domestic product under 9 C.F.R. § 590.900(b). Because the product was uninspected under the requirements of the EPIA and its regulations, under 21 U.S.C. § 1037(b)(2) the product could not be sold or transported within the county or exported.

The affidavits filed by the United States in support of summary judgment and the applicable federal statutes and regulations clearly establish that the powdered egg whites product should be seized and condemned. The product was illegally imported by Creative Compounds and cannot be transported in commerce or exported back to Peru.

As a result I will grant the United States' motion for summary judgment to seize and condemn the powdered egg whites.

Creative Compounds has filed two counterclaims against the United States.[3] It asserts a negligence claim against the USDA for approving a permit which induced Creative Compounds to unintentionally illegally import the product into the United States. (Counterclaim I and Claimant's Resp. Br. p. 3) The second counterclaim is for an improper taking (seizure) of the product without just compensation. Because Creative Compounds does not state the legal basis of the takings claim it is unclear whether the claim is made under the Fifth Amendment of the United

---

[3] Three other counter-claims were conceded and withdraw by Creative Compounds in its response to the United States' motion to dismiss and for summary judgment.

States Constitution or some other federal statute, state constitutional provision or state statute. Both of the counterclaims are asserted under the Federal Tort Claims Act (FTCA), 28 U.S.C. §2671 *et seq.* and each claim seeks $100,000 in damages.[4]

The United States has moved to dismiss these claims under the doctrine of sovereign immunity and under provisions of the FTCA.

As an initial matter it appears that most if not all of the fault for the powdered egg whites' illegal importation into this country lies with Creative Compounds and its import broker. Creative Compounds was anxious to import this product and had the product shipped to this country before receiving a permit. Haynes failed to read the permit and failed to comply with its two basic requirements. If he had simply read the permit and followed its direction he would have discovered from FSIS that the shipment could not enter the country. It would be expected that the import broker would read the permit and at least notice and alert Creative Compounds that an original health certificate must accompany the shipment into the country (nothing in the record provides any information in this regard). Despite not meeting that requirement, Creative Compounds through its broker, caused the shipment to be imported into the country and crossed the point of no return. The USDA attempted to allow Creative Compounds to procure the necessary documents to avoid the condemnation of the product but Creative Compounds was unable to do so.

However, I need not reach the merits of Creative Compounds' counterclaims because they

---

[4] There was some confusion in the briefing as to whether this Court has jurisdiction to hear Creative Compound's takings claim because the damages sought exceed $10,000. The confusion occurs because the jurisdictional provisions of the Tucker Act, 28 U.S.C. § 1346(a)(2) and the FTCA, 28 U.S.C. § 1346(b)(1) are both found under the same section of the United States Code. The Tucker Act vests jurisdiction for constitutional claims exceeding $10,000 exclusively with the United States Court of Federal Claims. Jurisdiction under the FTCA is vested in the district courts. Creative Compounds has unequivocally asserted its takings claim solely under the FTCA and invokes the Court's jurisdiction under that Act.

should be dismissed as a matter of law.

*Sovereign immunity*

"The doctrine of sovereign immunity acts as a bar to suit against the United States unless there has been an explicit waiver by the government." United States v. Testan, 424 U.S. 392, 399 (1976), see also United States v. Mitchell, 463 U.S. 206, 212 (1983)("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). "A waiver of sovereign immunity must be strictly construed in favor of the sovereign." Orff v. U.S. 545 U.S. 596, 602 (2005).

The United States argues that the counterclaims asserted by Creative Compounds should be dismissed because it has not waived it sovereign immunity as to those claims. Because the issue of sovereign immunity is a jurisdictional question, United States v. Johnson, 853 F.2d 619, 623 (8th Cir. 1988), the United States has moved to dismiss the claims under Fed. R. Civ. P. 12(b)(1).

The United States asserts that when it brings an *in rem* forefeiture action it does not waive its sovereign immunity or otherwise consent to be sued for tort counterclaims. The United States is correct. See U.S. v. Lockheed L-188 Aircraft, 656 F.2d 390 (9th Cir. 1979)(government did not waive sovereign immunity in filing an *in rem* forfeiture action so the district court's dismissal of counterclaim asserted under Tucker Act affirmed); U.S. v. $10,000.00 in U.S. Funds, 863 F. Supp. 812, 816 (S.D. Ill.1994)(court barred FTCA counter-claim stating "that the mere fact that the government is the plaintiff and has brought the forfeiture action does not constitute a waiver of sovereign immunity and authorize the bringing of a counterclaim."); United States v. All Right, Title & Interest, 821 F. Supp. 893, 899 (S.D. N.Y. 1993)(same).

As a result I find that Creative Compounds counterclaims should be dismissed because I lack jurisdiction to hear these claims based on the governments sovereign immunity.

The United States also asserts that although the FTCA waives sovereign immunity for some types of claims the counterclaims should be dismissed because they fall under an exclusion of the FTCA waiver. This is a "facial attack" and therefore the normal motion to dismiss standard applies because I look only to the face of the pleading, the statute and case law to determine whether jurisdiction is proper in this Court. See Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

To be actionable under § 1346(b) of the FTCA, "a claim must allege, inter alia, that the United States 'would be liable to the claimant' as 'a private person' 'in accordance with the law of the place where the act or omission occurred.'" F.D.I.C. v. Meyer, 510 U.S. 471, 477-478 (1994). The "law of the place" means law of the State which is the source of substantive liability under the FTCA. Id. "An action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward." Carlson v. Green, 446 U.S. 14, 23 (1980).[5]

As an alternative ground, the United States asserts that the counterclaims should be dismissed because under 28 U.S.C. § 2680(c), the Federal Tort Claims Act's waiver of sovereign immunity does not apply to "any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or by any other law enforcement officer." The government argues the seizure of the powdered egg whites product by the USDA was a detention of goods by a law enforcement officer and any

---

[5] If Creative Compound's takings claim is based on the Fifth Amendment of the United States Constitution it should be dismissed on the grounds that the United States "simply has not rendered itself liable under [the FTCA] for constitutional tort claims." F.D.I.C. v. Meyer, 510 U.S. 471, 477-478 (1994). Klett v. Pim, 965 F.2d 587, 589 (8th Cir. 1992) ("The violation of a federal statute or administrative regulation by an agency of the United States does not, standing alone, create a cause of action under the FTCA.").

counterclaim based on any injury caused by the government's detention is not allowed under the FTCA.

I find that the exception to the FTCA's waiver of sovereign immunity under section 2680(c) applies to this case. See Cheney v. United States, 972 F.2d 247 (8th Cir. 1992)(claims stemming from the detention of a vehicle by federal drug task force agent barred by section 2680(c))(citing Kosak v. United States, 465 U.S. 848, 853-854 (1984)(holding language of exception entitled to broad interpretation, including all injuries arising from a government official's detention of property). Both APHIS and FSIS have been delegated with the authority to enforce the statutory provisions of the EPIA and the AHPA to control and restrict or prohibit the entry of the powdered egg whites product into the United States. Creative Compounds' counter-claims arise from the detention of the product and are barred by section 2680(c). As a result Creative Compounds' counterclaims are alternatively dismissed on this ground.

The United States also asserts that the counter-claims should be dismissed under Fed. R. Civ. P. 12(b)(1) even if the claims were permissible under the FTCA because Creative Compounds failed to exhaust administrative remedies prior to filing its counterclaims. This is a "factual attack" under Fed. R. Civ. P. 12(b)(1) because matters outside the pleadings must be considered (determining whether Creative Compounds exhausted administrative remedies). Under a factual attack the non-moving party does not have the benefit of 12(b)(6) safeguards (no conversion of the motion to one for summary judgment and no presumptive truthfulness attaches to the claimant's allegations). See Osborn, 918 F.2d 729 n.6, 729-730.

In order to bring suit against the United States, a claimant must first present an administrative claim requesting a sum certain in damages to the appropriate federal agency and the claim must be denied. 28 U.S.C. § 2675(a). Section 2401(b) provides that a tort claim against the

United States "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b). This statute is a limitation on the government's waiver of sovereign immunity that must be strictly construed. K.E.S. v. United States, 38 F.3d 1027, 1029 (8th Cir.1994); Bellecourt v. United States, 994 F.2d 427, 430 (8th Cir. 1993)("Presentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant.").

It is undisputed that Creative Compounds never filed an administrative claim with the USDA or otherwise complied with 28 U.S.C. § 2675(a). Creative Compounds asserts that its counterclaims are compulsory and therefore the necessity to file an administrative claim is waived under 28 U.S.C. § 2675(a). However, "[c]ounterclaims under the F.T.C.A. have been permitted only when the principal action by the United States was in tort and the counterclaim was compulsory in nature." Spawr v. United States, 796 F.2d 279, 281 (9th Cir. 1986).

The government's present lawsuit is an *in rem* action for the seizure and condemnation of the powdered egg whites product which was imported into the United States in violation of the EPIA. Because the government's case is not a tort action section 2675(c) does not permit jurisdiction over Creative Compounds' alleged compulsory counterclaims when Creative Compounds did not file an administrative claim. Therefore, Creative Compounds' claims do not fall under the exception of section 2675(a).

In addition, the Federal Rules of Civil Procedure do not permit a court to entertain a counterclaim that violates the government's sovereign immunity. Fed. R. Civ. P. 13(d) specifically states "[t]hese rules shall not be construed to enlarge beyond the limits now fixed by law the right to assert counterclaims or to claim credits against the United States or an officer or agency thereof." Because the United States has not waived its sovereign immunity, Rule 13(b)

precludes Creative Compounds from filing its counterclaims. As a result, the counterclaims are alternatively dismissed for failing to first be raised in an administrative claim with the USDA.

Accordingly,

**IT IS HEREBY ORDERED that** Plaintiff United States of America's motion to dismiss and for summary judgment [#48] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 5th day of October, 2007.